UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JAJUAN WILLIAMS,

    Petitioner,                      Case No. 15-10106
                                           HONORABLE DENISE PAGE HOOD

v.

STEVEN RIVARD,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Michael Jajuan Williams, ("Petitioner"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 **[Docket No. 1, filed January 9, 2015]**, in which he challenges his convictions for armed robbery, M.C.L.A. 750.529; and felony-firearm, M.C.L.A. 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan

1

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1):

> At approximately 7:30 a.m. on August 19, 2011, the supervisor of the CVS Pharmacy located in Brownstown Township was in the store when she felt a gun to her back. A man asked for money. The supervisor went into the office and unlocked the safe, placing the cash in a red CVS bag. The robber became upset when he realized that she did not place the coins in the bag, and he began to dig the coins out of the safe. The robber was wearing mechanic, not winter, gloves that were black on one side and white on the other side. He also had a book bag and sunglasses. The robber handed the supervisor a surge protector and instructed her to tie her own hands, but she was unable. He ripped the phone cord out and tied the supervisor's hands with the cord, ordered her to get under a desk, and instructed her not to follow him. After the robber exited the office, the supervisor jumped up from under the desk, unrolled the cord from her hands, and dialed 911. The robbery was captured on the store's video surveillance system, but the store supervisor could not identify the robber.
>
> The store pharmacist was sitting in the parking lot when he noticed a man leave the store. Despite the fact that it was August, the man was "bundled up" with a hood and sunglasses on. The man jogged toward Telegraph Road and proceeded north and east away from the store. The store cashier advised the pharmacist that the supervisor had just been robbed. Within a minute of seeing the man flee the building, the store employees stopped the police from entering the store parking lot and pointed out the direction the robber had travelled on foot.
>
> A police officer received a radio bulletin that the suspect in the CVS robbery was an African–American male wearing

> a black hat, dark pants, and a backpack. The officer proceeded toward an apartment complex one-quarter mile from the CVS store where he saw defendant, an individual matching the description of the robber, who was walking fast. Defendant looked in the officer's direction and moved behind an apartment building. The officer drove north past this building, losing sight of defendant for 10 to 20 seconds, and found defendant walking with dark pants and a white shirt. The officer commanded defendant to put his hands up and lay on the ground. Defendant did not comply until additional officers arrived on the scene. In bushes near the apartment building where the officer briefly lost sight of defendant, responding officers found the backpack, hat, and hoodie. They found black and white gloves in defendant's pocket and a multi-color gun in his waistband that was the same gun displayed on the store's surveillance video. They also found the currency and coins missing from the CVS safe. Defendant was convicted as charged.

*People v. Williams*, No. 310136, 2013 WL 2662354, at *1 (Mich. Ct. App. June 13, 2013).

Petitioner's conviction was affirmed on appeal. *People v. Williams*, 495 Mich. 901, 839 N.W. 2d 222 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) Offense Variables 8 and 12 of the Michigan Sentencing Guidelines were improperly scored; (2) petitioner was denied the choice of counsel at trial where trial judge appointed Robert Slameka as trial attorney for the defendant after his retained attorney was indicted on criminal charges and petitioner did not waive his right to choice to counsel when the trial court forced the petitioner to go to trial

with Slameka, after petitioner stated on the record that he wishes to proceed along with retained attorney Dunn; (3) the trial court abused its discretion by ruling that the petitioner's arrest was legal where the police lacked probable cause; and (4) The trial court abused its discretion by exposing the jury to petitioner's past drug conviction which was irrelevant, prejudicial, and offered for the sole purpose of showing that petitioner is a bad person.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

**A. Claim # 1. The sentencing guidelines claim.**

Petitioner first claims that Offense Variables 8 and 12 of the Michigan Sentencing Guidelines was incorrectly scored.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a

5

cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Simpson v. Warren*, 662 F. Supp. 2d 835, 851 (E.D. Mich. 2009). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

### B. Claim # 2. The denial of the right to counsel of choice claim.

Petitioner claims that he was denied his right to the counsel of his choice when the trial judge appointed attorney Robert Slameka to represent him after his retained attorney, David Dunn, had been charged with a criminal offense. [1]

---

[1] Respondent claims that petitioner's claim is procedurally defaulted because petitioner failed to object to the replacement of his retained counsel at trial and the Michigan Court of Appeals relied on this failure to object to reject petitioner's claim. Although the Michigan Court of Appeals procedurally defaulted petitioner's claim, there is no indication that the Michigan courts require that a denial of counsel claim be preserved by a timely objection. "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 131 S. Ct. 1120, 1127-28 (2011)(internal quotation omitted). The Michigan Supreme Court has indicated that a criminal defendant need not affirmatively invoke his or her right to counsel to preserve it for appellate review. *See People v. Vaughn,* 491 Mich. 642, 657, 821 N.W. 2d 288 (2012)(internal citations omitted). Because the Michigan courts have not regularly followed a rule of requiring criminal defendants to object in order to preserve a denial of

Petitioner was originally represented by Dennis Shrewsbury of the Defender's office, before retaining attorney Patricia Slomski. Petitioner subsequently asked Ms. Slomski to withdraw from his case, which she did. Wyatt Harris took over as counsel for petitioner and the trial court adjourned the trial so that Mr. Harris could prepare for trial. (Tr. 11/16/11, pp. 4-9, Tr. 4/4/12, p. 4). Harris represented petitioner for several months before petitioner hired David Dunn. Mr. Dunn filed an appearance but never appeared in court with petitioner prior to trial. (Tr. 4/4/12, p. 4). Mr. Dunn represented petitioner until Dunn was arrested on multiple charges including suborning perjury in a murder case. Petitioner stated on the record that he was still interested in having Dunn represent him. (Tr. 3/22/12, pp. 4-6). Neither the court nor the prosecutor was able to reach Dunn to determine whether he would still represent petitioner, though Dunn's own lawyer had told the prosecutor that Dunn would not be representing petitioner. (Tr. 4/4/12, pp. 4-5). To assure that petitioner would have representation, the trial court assigned Robert Slameka to represent petitioner. Mr. Slameka reviewed the case and the evidence, in case Dunn was not available on the trial date. (Tr. 3/22/12, p. 6).

On the first day of trial, Mr. Dunn appeared in court. The judge, after

---

counsel claim, the Court declines to procedurally default this claim.

reviewing the history of the case, the several substitutions of counsel, and the difficulties in determining whether Mr. Dunn would appear as counsel, made the following remarks:

> THE COURT: The jury is sitting out in the hall right now. We have all of the witnesses here and at 9:30 – the time and date scheduled for trial, Mr. Dunn appeared. It is my understanding that Mr. Williams wishes to go through with Mr. Slameka as Counsel. Mr. Dunn will be sitting at counsel table, but we are not going to adjourn this. I think I've told Mr. Williams that before; that there's just been too many adjournments in this matter and we're proceeding. Is that your understanding, Mr. Williams?
>
> THE DEFENDANT: Yes, Your Honor.

(Tr. 4/4/12, p. 5).

The trial court let Mr. Dunn sit with petitioner and Mr. Slameka at counsel table. Mr. Slameka indicated on the record that he agreed to listen to what Dunn had to say, but noted that he would be making his own decisions about how to try the case. (*Id.*, p. 8).

The following exchange occurred:

MR. SLAMEKA: Judge, I'd like to just put something on the Record if you'd be so considerate. Mr. Dunn is sitting to my right. If the Court please – I think I've indicated before that I don't need it, but if Mr. Williams wants him here – but I just want Mr. Williams to know that I'm going to be directing this trial. I'll listen to what Mr. Dunn has to say at certain breaks, but I'm asking him not to interfere with the actual course of the trial. If Mr. Williams cannot accept it, then I don't know what else I can say, if the Court please.

THE DEFENDANT: I accept, Your Honor.

(*Id.,* p. 8).

One element of the Sixth Amendment right to counsel is the right of a defendant who does not require appointed counsel to choose who will represent him or her. *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Id.* (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)). Where a criminal defendant's right to be assisted by counsel of one's choice is wrongly denied, it is unnecessary for a reviewing court to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. *Id.* at 148. "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.*

However, "[w]hile a criminal defendant who can afford his own attorney has a right to a chosen attorney, that right is a qualified right." *Serra v. Michigan Department of Corrections,* 4 F. 3d 1348, 1351 (6th Cir. 1993)*(*citing *Wheat v.*

9

*United States,* 486 U.S. at 159). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F. 2d 275, 280 (6th Cir. 1985). The Supreme Court, in fact, has "recognized a trial court's wide latitude in balancing the right to counsel of choice...against the demands of its calendar." *Gonzalez-Lopez,* 548 U.S. at 152 (citing *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)). Thus, "[A]lthough a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F. 2d 407, 413 (6th Cir. 1984). "[E]very person has a constitutional right to retain at his own expense his own counsel so long as that right does not unreasonably interfere with the normal progress of a criminal case." *Linton v. Perini*, 656 F. 2d 207, 211 (6th Cir. 1981).

    In the present case, the trial judge appointed Robert Slameka to represent petitioner after petitioner's retained counsel, David Dunn, had been charged with a crime. Neither the judge nor the prosecutor was able to reach Dunn to verify whether he would still represent petitioner, though Dunn's own lawyer had informed the prosecutor that Dunn would not be representing petitioner. Neither Mr. Dunn or anyone working for him ever informed the trial judge when or if Mr. Dunn would be able to return to court to represent petitioner. Finally, petitioner's

10

case had been adjourned several times due to the fact that petitioner had discharged three of his prior attorneys.

When a criminal defendant's retained counsel becomes unavailable, it does not violate a petitioner's right to the counsel of his choice to require him or her to proceed with other counsel. *See Morris v. Slappy,* 461 U.S. at 11 (right to counsel of choice not violated when trial court refused continuance even though defendant's counsel of choice was in the hospital); *Spikes v. Mackie,* 541 Fed. Appx. 637, 651-52 (6th Cir. 2013)(petitioner was not denied his right to counsel of his choosing when the trial court appointed him counsel after his retained attorney was hospitalized during prosecution, where trial court warned defendant that if he was unable to retain new counsel, the court would appoint counsel, and defendant never objected to trial court's appointment of counsel after defendant was unsuccessful in his attempt to retain counsel); *United States v. Allen,* 522 F. 2d 1229, 1232-33 (6th Cir. 1975)(trial court did not err in denying motion for continuance sought because of illness of one defense attorney who was former employee of the Internal Revenue Service, who was primarily responsible for accounting and tax aspects of tax prosecution and who was to testify as expert for defense, where other attorneys who were former service employees and who had assisted absent attorney were familiar with case and qualified to assist trial

counsel on technical matters); *Giacalone v. Lucas*, 445 F. 2d 1238, 1240-43 (6th Cir. 1971)(refusal of state trial court to grant a continuance to prisoner until his chief counsel left hospital where he was undergoing diagnostic tests for a heart condition did not entitle petitioner to federal habeas corpus relief, where two other continuances had already been granted for convenience of counsel, where counsel's partner and associate provided competent representation, and where it could have been as much as four months or more before counsel would again become available for trial).

Furthermore, when Mr. Dunn appeared on the first morning of trial, the trial judge permitted Mr. Dunn to sit at counsel table with Mr. Slameka. Although Mr. Slameka indicated he would make the decisions in this case, he did agree to confer with Mr. Dunn during trial. Petitioner agreed to this procedure.

Although a state cannot force unwanted counsel upon a defendant against his will, *Faretta v. California*, 422 U.S. 806, 820 (1975), what essentially happened was that petitioner agreed to Mr. Slameka taking over as lead counsel in his case while permitting his retained counsel Mr. Dunn to remain on the case. Under such circumstances, petitioner was not denied his Sixth Amendment right to the assistance of counsel. *See e.g. U.S. v. Namer,* 149 Fed. Appx. 385, 393-95 (6th Cir. 2005)(trial court did not abuse its discretion in denying defendant's

12

motion for substitution of counsel, where the court fashioned a reasonable compromise by elevating second-chair counsel to lead position and retaining former lead counsel as advisor).

Finally, the Court rejects petitioner's claim that he did not knowingly and intelligently waive his right to the counsel of his choice. Although a criminal defendant must knowingly and intelligently waive his right to counsel, *see Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Brewer v. Williams,* 430 U.S. 387, 404 (1977); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), there is no clearly established Supreme Court precedent which requires a waiver from a criminal defendant when his or her attorney of choice is replaced with another attorney. *See e.g. Hagos v. Werholtz,* 548 Fed. Appx. 540, 543 (10th Cir. 2013), *cert. denied*, *Hagos v. Raemisch,* 135 S. Ct. 340 (2014). Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3.  The illegal arrest claim.

Petitioner next argues that the trial court abused its discretion in ruling that officers had probable cause to arrest him.

Petitioner's Fourth Amendment challenge to the admission of the evidence in this case is non-cognizable on federal habeas review. A federal habeas review of a petitioner's arrest or search by state police is barred where the state has

13

provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).

Therefore, on federal habeas review, a federal court cannot re-examine a petitioner's Fourth Amendment claim that evidence should have been suppressed as "poisonous fruit" of his illegal arrest, where the state provided an opportunity for full and fair litigation of the habeas petitioner's Fourth Amendment claim prior to trial. *See Wilson v. Straub,* 185 F. Supp. 2d 766, 770-71 (E.D. Mich. 2002); *See also Walendzinski v. Renico,* 354 F. Supp. 2d 752, 759 (E.D. Mich. 2005); *Monroe v. Smith,* 197 F. Supp. 2d 753, 766 (E.D. Mich. 2001).

In spite of the way that petitioner words his claim, there is no indication that the trial court ever ruled on the legality of the arrest. Petitioner, however, raised this claim on direct appeal. The Michigan Court of Appeals ruled that the police had probable cause to arrest petitioner. *Williams,* 2013 WL 2662354, at * 4-5.

The opportunity to litigate, for purposes of *Stone v. Powell,* encompasses

more than an evidentiary hearing in the trial court. It also includes corrective action available through the appellate process on direct review of the conviction. *See Pulver v. Cunningham*, 419 F.Supp. 1221, 1224 (S.D.N.Y.1976); *See also Rashad v. Lafler,* 675 F. 3d 564, 570 (6th Cir. 2012)(petitioner had ample opportunities in state court to present his Fourth Amendment claims, thus precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004)(petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief). Because all of the material facts were before the state appellate courts on direct review and the appellate process was not otherwise deficient, the petitioner had a full and fair opportunity to litigate his third claim.

### D.  Claim # 4.  The prior bad acts evidence claim.

Petitioner finally claims that the trial court abused its discretion in admitting evidence of his prior drug conviction, which he claims was irrelevant, prejudicial,

15

and offered solely to show his propensity to commit crimes, in violation of M.R.E. 404(b).

The Supreme Court has held that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Williams v. White*, 183 F. Supp. 2d 969, 977 (E.D. Mich. 2002). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981). "[E]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F. 3d 363, 370 (6th Cir. 1994).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grounds*, 563 F. 3d 222 (6th Cir. 2009); *see also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

To the extent that petitioner argues that the state court violated M.R.E. 404(b) by admitting improper character evidence against him, he would not be entitled to relief because this claim is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F. 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to relief on his fourth claim.

## IV. Conclusion

For the reasons discussed, state court adjudication of the petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the United States Supreme Court.  Nor did the state court adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court concludes that the petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11, Rules Governing § 2254 Proceedings.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See*

*Slack v. McDaniel*, 529 U.S. at 484. The petitioner may, however, proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

### V. ORDER

Based upon the foregoing,

**IT IS ORDERED** that the petition for a writ of habeas corpus **[Docket No. 1, filed January 9, 2015]** is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** That a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that the petitioner will be **GRANTED** leave to appeal *in forma pauperis.*


Dated: July 10, 2015          S/Denise Page Hood
                              Denise Page Hood
                              United States District Judge


I hereby certify that a copy of the foregoing document was served upon counsel of record on July 10, 2015, by electronic and/or ordinary mail.

                              S/LaShawn R. Saulsberry
                              Case Manager